UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

JUAN LUCIO,                    )
                               )
        Petitioner,            )
                               )
        v.                     )    No. 2:15 CV 360
                               )
SUPERINTENDENT,                )
                               )
        Respondent.            )

## OPINION and ORDER

Juan Lucio filed a habeas corpus petition challenging his conviction and life sentence without the possibility of parole for murder by the Hamilton County Superior Court on April 25, 2008, under cause number 29S00-0901-CR-1. (DE # 1 at 1.)

## I. BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Lucio's burden to rebut this presumption with clear and convincing evidence. *Id.* The Court of Appeals of Indiana summarized the evidence as follows:

> The trial evidence favorable to the verdict indicated that the defendant was recruited by Toby Payne to kill Payne's estranged wife Rebecca Payne, and her boyfriend, George Benner. Toby had given the defendant a key to Rebecca's house and a map, and promised him $100,000 from a life insurance policy in return for the killing. The defendant, in turn, recruited Kyle Duckworth to drive him to Rebecca's house in exchange for $200 or a quarter-pound of marijuana. Originally, the defendant planned to be the shooter, but later changed his mind and recruited Anthony Delarosa to be the triggerman. On April 2, 2007, Duckworth drove the defendant and Delarosa to Rebecca's house. The defendant gave Delarosa a gun, and Delarosa

entered the house but returned and said that Rebecca was not home. The men agreed to try again later. On April 4, the defendant called Duckworth to pick him up, called Delarosa to ask if he was ready, and called Toby Payne to inform him they were trying again. The three men drove to Rebecca's home, the defendant again gave Delarosa a gun, and Delarosa entered the house and fired the fatal shots. When police had questioned him during their investigation, the defendant first admitted that Toby Payne had given him a key to the house and asked him to kill Rebecca, but later claimed that they were supposed to scare Rebecca and extort money from her, that Delarosa told him where to go, that he did not know Delarosa had a gun, that he did not know why Delarosa was extorting money from her, and that he and Duckworth were supposed to get $200 each for driving.

At the conclusion of all the evidence [presented at the ensuing trial], the jury was instructed on vicarious criminal liability.[] It found the defendant guilty on all three counts. In the subsequent penalty phase proceeding, the jury determined that the State had proved two charged aggravating circumstances—murder for hire and multiple killings, Ind. Code §§ 35-50-2-9(b)(4), (b)(8)—beyond a reasonable doubt, found that the aggravators outweighed the mitigators, and recommended that the defendant be sentenced to life in prison without parole. The trial court, following the jury's recommendation, sentenced the defendant to life without parole for the murder counts and imposed a fifty-year term for the conspiracy count, all sentences to run consecutively.

(DE # 13-10 at 2–3 (citing *Lucio v. State*, 30 N.E.3d 787 at *1 (Ind. Ct. App.)).)

Lucio argues that he is entitled to habeas corpus relief because he was denied effective assistance of trial counsel. Lucio argues that his trial counsel: (1) failed to properly preserve issues for appeal; (2) failed to present mitigating evidence during the evidentiary phase of the trial; (3) failed to present mitigating evidence during the penalty phase of the trial; (4) failed to object to the State's statement during closing argument; (5) failed to object to the State's belated amendment of the information; and (6) failed "to be certified to handle life without parole cases." (DE # 1 at 3.) Lucio also argues that the trial court improperly denied trial counsel's motion for the appointment

2

of co-counsel to assist in challenging the State's recommendation of life without the possibility of parole. (*Id.*)

## II.  PROCEDURAL DEFAULT

Respondent argues that Lucio is procedurally defaulted—and thus barred from pursuing—all but two of his claims. (DE # 13 at 7.) Respondent argues that Lucio failed to raise the following issues when he petitioned the Indiana Supreme Court for transfer of his post-conviction relief ("PCR") case: (1) trial counsel's failure to preserve arguments for appeal; (2) trial counsel's failure to present mitigating evidence during the trial phase; (3) trial counsel's failure to object to the prosecutor's comments during trial; (4) trial counsel's failure to be certified to handle cases involving a requested sentence of life without parole; and (5) the trial court's denial of counsel's request for co-counsel.

Before considering the merits of a habeas petition, a federal court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To avoid procedural default, a habeas petitioner must fully and fairly present his federal claims to the state courts. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). Fair presentment "does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Brevik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citing *Boyko*, 259 F.3d at 788). It does, however, require "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-

3

conviction proceedings." *Lewis*, 390 F.3d at 1025 (internal quotation marks and citations omitted). "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Id.*

Respondent is correct that Lucio did not raise many of his present claims before the Indiana Supreme Court.[1] Specifically, he did not argue that his trial counsel: failed to preserve issues for appeal; failed to present mitigation evidence during the trial phase; or failed to be certified to represent defendants facing life without parole. Lucio also did not pursue a claim that the trial court erred in denying his counsel's request for co-counsel. Because he did not fully and fairly present these claims through one full round of state court review, he is procedurally defaulted on these claims.

A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure.

---

[1] Lucio presented the following issues in his petition to transfer the Court of Appeals' denial of his PCR petition in the Indiana Supreme Court:
1. Whether the Court of Appeals erred in finding trial counsel provided the effective assistance of counsel Lucio required under the federal and state constitutions. Trial counsel presented no mitigating evidence during the penalty phase proceedings under I.C. 35-50-2-9. He also failed to object to the late amendment of charges, to the prosecutor's misstatement of fact, and to jury instructions.
2. Whether the Court of Appeals erred in finding appellate counsel provided Lucio with constitutionally guaranteed assistance of counsel on direct appeal when he failed to challenge the admission of victim impact testimony, the belated amendment of charges, the penalty phase instructions and the insufficient evidence supporting one of the penalty phase aggravators.

(DE # 13-13 at 2.)

Lucio also did not raise these claims on his direct appeal. On direct appeal, Lucio's only claim was that the trial court erred in denying his request for a mistrial after, in response to a juror question, a witness violated a pretrial order by testifying that she thought Lucio had met one of the co-conspirators in a county jail.

*Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 2382 (2009). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). Here, Lucio does not attempt to argue cause or prejudice. Nor could he, as he was assisted by counsel at all stages of his post-conviction relief case and he does not presently challenge the effectiveness of that representation.

A habeas petitioner can also overcome a procedural default by establishing that the Court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006). To meet this exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Here, Lucio does not argue that any fundamental miscarriage of justice will occur. Because he cannot show cause for his failure to fairly present these claims in one complete round of state court review, or that any fundamental miscarriage of justice would occur if the claims are not addressed, these claims are procedurally defaulted and that default is not excused.

Respondent is mistaken, however, in asserting that Lucio is also procedurally defaulted on his ineffective assistance of counsel claim regarding a statement made by the prosecutor during closing argument. Respondent contends, "Lucio never claimed that trial counsel was ineffective for failing to object to the prosecutor's comments during trial . . . ." (DE # 13 at 7–8.) Rather, Respondent argues that Lucio only raised a

5

"free-standing prosecutorial misconduct claim" and therefore, "any allegation that trial counsel was ineffective for failing to object to the prosecutor's comments is barred by procedural default." *Id.* This is not the case. In his petition to transfer his PCR case to the Indiana Supreme Court, Lucio argued that his trial counsel "failed to object to . . . the prosecutor's misstatement of fact . . . ." (DE # 13-13 at 2.) Respondent, in turn, incorporated by reference the response he submitted in opposition to Lucio's PCR appeal to the Indiana Court of Appeals. (DE # 13-14 at 4.) In that brief, Respondent argues at length that Lucio's trial counsel was not ineffective for failing to object to the prosecutor's statement during closing argument. (DE # 13-8 at 41–46.) Respondent had a full and fair opportunity to address this claim, and did so. Thus, Lucio is not procedurally defaulted on this claim.

### III. LEGAL STANDARD

*A. Habeas Corpus Standard*

"Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (internal quotation marks and citations omitted).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods*, 135 S. Ct. at 1376 (internal quotation marks and citations omitted). Criminal defendants are entitled to a fair trial but not a "perfect" one. *Rose v. Clark*, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be "objectively" unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted).

    B.    *Ineffective Assistance of Counsel Standard*

To prevail on an ineffective assistance of counsel claim in the state courts, Lucio had to show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at

7

694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 693. In assessing prejudice under *Strickland* "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). However, "[o]n habeas review, [the] inquiry is now whether the state court unreasonably applied *Strickland* . . . ." *McNary v. Lemke*, 708 F.3d 905, 914 (7th Cir. 2013). "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." *Id.*

## IV. ANALYSIS

### A. Amendment of the Information

Lucio claimed that his trial counsel was ineffective because his counsel failed to object to amendments of the information.[2] (DE # 13-13 at 9.) He argued that trial counsel was ineffective for failing to object to the State's addition of (1) a conspiracy charge, and (2) a request for life without the possibility of parole. Lucio claimed that he was prejudiced by each of the amendments because it affected his defense and changed the positions of the parties.

Lucio was charged with two counts of murder on April 13, 2007. (DE # 13-1 at 1.) On December 4, 2007, the State was granted leave to amend the information to include a third charge for conspiracy to commit murder. (*Id.*) During a hearing on the motion to amend the information, Lucio's attorney "indicated that, after discussing the issue, 'he

---

[2] Lucio's petition lists his claims without providing any elaboration. Thus, to clarify the contours of his claims, this court will rely upon the more robust arguments Lucio presented to the Indiana Supreme Court in his petition to transfer the denial of his PCR appeal.

8

did not believe he had a legal objection' to the amendment." (DE # 13-10 at 7); *Lucio*, 30 N.E.3d 787 at *3. On December 26, 2007, the State filed a request for life imprisonment without the possibility of parole. (DE # 13-1 at 5–6.) In response to this request, Lucio's counsel requested a continuance and the appointment of co-counsel. (*Id.*) Only his request for a continuance was granted. The jury trial was held in April 2008.

Lucio argued that his trial counsel should have objected to the addition of the conspiracy charge because the addition of this charge opened the door for the admission of testimony that would have otherwise been inadmissible. Lucio argued, "Duckworth's testimony repeating Delarosa's graphic description of the crime was hearsay but admissible as comments made in furtherance of a conspiracy. Duckworth's girlfriend was then allowed to repeat Delarosa's recitation of the crime as told to her by Duckworth. This hearsay also would not have been admissible without the conspiracy charge." (DE # 13-7 at 30.)

Indiana law provides that the information may be "amended in matters of substance . . . before the commencement of trial . . . if the amendment does not prejudice the substantial rights of the defendant." Ind. Code § 35-34-1-5 (West). A criminal defendant's substantial rights "include a right to sufficient notice and an opportunity to be heard regarding the charge; and, if the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights." *Gomez v. State*, 907 N.E.2d 607, 611 (Ind. Ct. App. 2009) (internal quotation marks omitted). "Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges." *Id.*

The Indiana Court of Appeals was not unreasonable in finding that Lucio was not prejudiced by the addition of the conspiracy charge. The court concluded that because Lucio had more than a month to prepare a defense to the conspiracy charge, and did not explain how he would have prepared his defense differently had he had additional time, there was insufficient evidence that his substantial rights were affected by the amendment. (DE # 13-10); *Lucio*, 30 N.E.3d 787 at *3. The court also held, "Lucio's contention that the testimony relevant to the conspiracy charge would have been inadmissible hearsay absent the addition of that charge is without merit." *Lucio*, 30 N.E.3d 787 at *4. The court cited *Francis v. State*, 758 N.E.2d 528, 533 n.5 (Ind. 2001), where the Indiana Supreme Court held that Indiana Rule of Evidence 801(d)(2)(E) – which provides an exemption to the hearsay rule if the statement was made by a party's co-conspirator – "applies not only to conspiracies but also to joint ventures, and that a charge of criminal conspiracy is not required to invoke the evidentiary rule." *Id.* (internal quotation marks omitted). Thus, the Court of Appeals concluded, "Delarosa and Payne were coconspirators with Lucio, and the testimony regarding their statements relevant to the conspiracy, as set out above, would have been admissible whether the State had amended the information or not." *Id.*

The Indiana Court of Appeals' findings regarding the addition of the conspiracy charge were reasonable in light of the fact that the evidence would have been admissible even without the amendment. *See also Northern v. Boatwright*, 594 F.3d 555, 561 (7th Cir. 2010) ("Obviously, an attorney is not constitutionally deficient for failing to lodge a meritless objection"); *U.S. ex rel. Link v. Lane*, 811 F.2d 1166, 1170 (7th Cir. 1987)

10

("Petitioner cannot demonstrate prejudice from counsel's failure to object unless there is a legally supportable argument for excluding the statements").

The Court of Appeals, moreover, was not unreasonable in determining that Lucio's trial counsel was not ineffective when he failed to object to the State's request for life without parole two weeks prior to the scheduled trial date. The court found that Lucio did not demonstrate that the trial court would have sustained the objection, had it been made, and thus trial counsel was not ineffective when he did not object. This was a reasonable application of the law. *See Northern*, 594 F.3d at 561–62 (criminal defendant did not have ineffective assistance of counsel claim where trial counsel failed to object to State's amendment of the information less than 24-hours before the start of trial because defendant suffered no prejudice).

Lucio argued that this amendment forced him to waive his right to a speedy trial. (DE# 13-7 at 30.) However, the Court of Appeals rejected this argument in light of an Indiana Supreme Court decision holding that the filing of a death penalty request was timely despite the fact that it was made one-week prior to trial. *See Lowrimore v. State*, 728 N.E.2d 860, 866 (Ind. 2000). The Court of Appeals' finding was not unreasonable in light of the applicable law. *See also Ashburn v. Korte*, 761 F.3d 741, 751 (7th Cir. 2014) ("Without a meritorious speedy trial claim, [the petitioner] cannot possibly demonstrate that he was prejudiced by his appellate counsel's failure to argue such a claim").

B.  *Lack of Mitigating Evidence During Penalty Phase*

In his petition to transfer his PCR petition to the Indiana Supreme Court, Lucio argued that his trial counsel was ineffective because he did not present any mitigating

11

evidence during the penalty phase of his trial. (DE # 13-13 at 5.) Lucio believed his trial counsel should have presented the jury with the following mitigation evidence:

> Lucio worked in the fields with his migrant parents when he was a very small child. When Lucio was 8 or 9, his family moved to Frankfort, Indiana. They were one of nine or ten Hispanic families living in Frankfort at the time. Those families, however, included cousins and aunts and uncles. They were a loving, tight-knit family. Lucio's parents loved him but did not provide much discipline. Lucio began getting in trouble with the law for minor offenses at the age of ten. When Lucio was ten, a young cousin of his was found hanged on his front porch. The police determined there was no foul play though Lucio was convinced a neighborhood boy had been involved. Lucio believed the police did not take his cousin's death seriously because he was from a family of Mexican migrants.
>
> Lucio's cousin's death was a turning point for him. It had a significant effect on him. Any respect for authority was gone. At the same time, the lack of discipline in the home normalized behavior society sees as deviant. Lucio joined a gang and it met in Lucio's home. From the time Lucio was about twelve years old, he was allowed to drink alcohol and smoke marijuana without repercussions from his parents. Lucio's lack of ties to society's institutions such as school, church, career, led him down a path that helps explain why he ended up in the car with Delarosa and Duckworth on April 4, 2007.
>
> The mitigation presented at post-conviction also showed Lucio's positive traits. He loved his family and was very protective of them. He was a positive influence on his young cousins and discouraged them from joining a gang. He was a good father to his daughter. Though family and friends knew Lucio had been in trouble, they trusted him with their children. He is bonded to his family which is a positive factor that Lucio will be a low risk as he ages out of anti-social personality disorder.

(DE # 13-13 at 6–7 (internal citations omitted).) According to Lucio, trial counsel's failure to uncover and present mitigation evidence could not be justified as a tactical decision because his counsel had not conducted a thorough investigation of his background.

In capital cases, a defendant has a right to have mitigation evidence presented to the jury. *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 248 (2007). In Indiana, cases with a request for a life sentence without the possibility of parole are considered capital cases. *See* Ind. Code 35-50-2-9.

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Wiggins*, 539 U.S. at 521–22 (internal quotation marks omitted). The court's principle concern in determining whether counsel exercised reasonable professional judgment "is not whether counsel should have presented a mitigation case. Rather, we focus on whether the investigation supporting counsel's decision not to introduce mitigation evidence of [the defendant's] background was *itself reasonable*." *Id.* at 522–23 (emphasis in original).

In this case, Lucio's counsel hired a private investigator to assist in researching Lucio's background for mitigation evidence. The investigator "obtained school records and work history, which were almost non-existent. He interviewed the Petitioner's mother, father, a few of his brothers and his aunt." (DE # 13-7 at 55.) The investigator prepared a report of his investigation and a separate report of his interview with Lucio's mother. (*Id.* at 56.) He also "corroborated through a newspaper article that on

March 19, 1995, the petitioner's cousin died of hanging which had been ruled accidental but the family believed was a homicide." (*Id.*) The investigator "opined that this event had a profound effect on the family but the Petitioner did not tell [the investigator] it [had] such an effect on him." (*Id.*) Lucio's counsel also hired "a well-regarded Forensic Psychiatrist, to conduct an evaluation of the Petitioner to try to ascertain if any mitigation evidence existed from a psychological standpoint. [The forensic psychiatrist] found the Petitioner to be of average intelligence and offered a diagnosis of Anti-Social Personality Disorder and Substance Abuse." (*Id.*)

Lucio's counsel also discovered that Lucio had an extensive criminal background. The Presentence Investigation Report revealed that Lucio "had five juvenile adjudications which began when the defendant was 10 years old, 2 of them were for felonies. Prior to turning 18, the Petitioner had had (sic) been sentenced to Boys School, twice to Res Care, to Home detention, to probation, and violated his probations and Community Commitment placements." (DE # 13-7 at 72.) "As an adult, the Petitioner had 9 misdemeanor convictions and four felony convictions . . . . The Petitioner's adult convictions began in 2004 with possession of marijuana and possessing a handgun without a license. The same year, the Petitioner was also convicted of resisting a law enforcement officer and disorderly conduct and violated his probation in that case." (*Id.* at 73.) Lucio "then was convicted of auto theft, and two counts of theft, placed on probation and violated that probation." *Id.* As time went on, Lucio "went on to more violent crimes and was convicted of battery in June 28, 2006 (sic). The petitioner also had serious criminal charges of 12 felonies pending at the time

14

of this trial for a drive-by shooting resulting in charges for attempted murder and conspiracy to commit murder in Clinton County." *Id.*

The Indiana Court of Appeals found that counsel's strategic decision not to present mitigation evidence during the sentencing phase of the trial did not amount to ineffective assistance of counsel. In explaining his decision, Lucio's trial counsel stated, "[t]here was little positive information that [the investigator] brought back to me that I felt was concrete and usable." (DE # 13-10 at 15.) Rather, "there was much that was unfavorable towards Juan that was available to the State that would have been triggered had an attempt been made to present favorable testimony on his behalf." (*Id.*) Counsel felt that "it was better to proceed with the evidence that had been presented. His testimony as to his role in the proceedings and the fact that he was an accomplice rather than the actual trigger man for the murder." (*Id.* at 15–16.) The Court of Appeals also noted that counsel's decision was made in an attempt to avoid disclosure of evidence that Lucio had been a member of the Latin Kings gang since he was 11 or 12 years old. The court ultimately agreed that Lucio's trial counsel "conducted an adequate investigation into mitigating evidence and was not ineffective when he did not present mitigating evidence at the penalty phase." (DE # 13-10 at 17.)

The Court of Appeals' holding was not unreasonable. The American Bar Association (ABA) standards for capital defense work have long been relied on by courts to determine whether an investigation was reasonable. *Wiggins*, 539 U.S. at 524. These guidelines require counsel to explore the defendant's: medical and mental health history; family and social history; educational history; military service; employment

15

and training history; and prior juvenile and adult correctional experience. ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, https://www.americanbar.org/content/dam/aba/migrated/2011_build/death_penalty_representation/2003guidelines.authcheckdam.pdf. Here, Lucio's counsel did conduct an investigation into these areas of Lucio's life, but found that Lucio's disreputable past conduct would outweigh any benefit of introducing mitigating evidence. The Court of Appeals was not unreasonable in approving of this calculation.

Lucio's own behavior during the trial underscores the reasonableness of the Court of Appeals' holding. Trial counsel decided not to call Lucio as a witness during the sentencing phase "because he did not believe the Petitioner would be very sympathetic in front of the jury. Besides his voluminous criminal history, being involved with the Latin Kings as a gang member, and having no employment history, the defendant had outbursts in front of the Court and the jury after he was found guilty." (DE # 13-7 at 58.) The PCR trial court noted the following exchange that took place in open court following the verdict, outside the presence of the jury:

> The Defendant: I hope to God mother fuckers, I hope that I'll be able to get away and laugh at you mother fuckers. Fuck all of you.
> Mr. Henke: Juan, that's enough.
> The Defendant: Fuck this shit.
> Court: Sir…
> The Defendant: I mean fuck you.

(*Id.*) The PCR court also noted the following exchange that occurred in the presence of the jury, after the trial court asked Lucio his age:

16

> The Defendant: You can suck my dick. That's my age.
> The Court: Mr. Lucio, what is your age?
> Defendant: you can suck my dick.

(*Id.*) When the trial court ordered that Lucio be removed from the courtroom, Lucio looked in the direction of the victim's family and stated: "Fuck you. Fuck your stupid ass daughter. You can all suck my dick. The bitch can rot in hell." (*Id.*)

In light of all of this evidence, the Court of Appeals was not unreasonable in finding that Lucio suffered no prejudice as a result of his counsel's decision not to present mitigation evidence during the sentencing phase of the trial.

    C.    *Prosecutor's Comment During Closing Argument*

Lucio's final claim was that during the closing argument the State improperly asserted that Lucio "reveled in the details" of his crime. Lucio argued that this was improper because there was no evidence to support the statement. (DE # 13-13 at 11.) The prosecutor stated: "[h]e reveled, he reveled in hearing the details of the murders on the way home, the details not as described by him, the details as described in graphic detail by Kyle Duckworth when he took the stand." (DE # 13-7 at 93.) The prosecutor's reference was to trial testimony provided by Duckworth (the driver) regarding Delarosa's (the shooter's) statement after committing the murders.

> Q:    When he got in the car, did he say anything?
> A:    Yes.
> Q:    Now, in his exact words if you remember, what did Tony Delarosa say?
> A:    That they're done, I shot them.
> Q:    They're done, I shot them?
> A:    Yeah.
> Q:    Did he say anything further about the shooting?
> A:    He described what happened.

> Q: Kyle, I'm going to ask you to repeat the words that Tony Delarosa said to you and Juan when he got back in that car.
> A: That he walked into the front door, crouched by a chair and then he heard moaning sounds and he went into the bedroom and they were having sex and he said he walked in, the dude was eating the bitch's pussy and he shot her first and then he shot him.
> Q: And what was his attitude like when he was telling you that he shot them while this sex act was going on?
> A: A little cocky, like joking around, kind of.

Trial Record, Volume II, at 260-61, *Lucio v. State*, 29D01-1006-PC-64.

The Court of Appeals determined that Lucio was not prejudiced by the prosecutor's statement that Lucio "reveled in the details" of the crime. The Court noted that, "[g]iven the substantial evidence of Lucio's guilt, the prosecutor's commentary is unlikely to have affected the jury's deliberations." (DE # 13-10 at 11–12.) This conclusion was not unreasonable. To establish prejudice arising from the ineffective assistance of counsel, there must be a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id*. at 693.

For purposes of granting habeas corpus relief, an unreasonable application of law "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods,* 135 S.Ct. at 1376. The state court's application of the law must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* The Court of Appeals' determination that Lucio suffered no prejudice as a result of the prosecutor's comments was not objectively unreasonable. The prosecutor's statement that Lucio

"reveled in the details of his crime" on the drive home was a reasonable inference to be made from the vulgar description of the crime Delarosa provided Lucio. Moreover, it was not unreasonable for the Court of Appeals to have determined that the prosecutor's comment did not have a probable impact on the jury's decision during the guilt or sentencing phase of trial, in light of the scope of evidence against Lucio. *See supra* at 1-2. Thus, Lucio is not entitled to habeas corpus relief based on the prosecutor's comment.

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this opinion for denying habeas corpus relief, there is no basis for encouraging Lucio to proceed further. Thus, a certificate of appealability must be denied. For the same reasons, he may not appeal *in forma pauperis* because an appeal could not be taken in good faith.

## V. CONCLUSION

For the foregoing reasons, the court **DENIES** the habeas corpus petition;

**DENIES** a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11;

**DENIES** leave to appeal *in forma pauperis* pursuant to 28 U.S.C. § 1915(a)(3); and

**DIRECTS** the clerk to enter judgment in favor of the Respondent and against the Petitioner.

**SO ORDERED.**

Date: October 26, 2017

s/James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT